IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD H. BELL, JR.,

        Plaintiff,                        No. CIV S-07-2532 DAD

    v.

MICHAEL J. ASTRUE,                ORDER
Commissioner of Social Security,

        Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and remand, and defendant's cross-motion for summary judgment.  For the reasons explained below, plaintiff's motion for summary judgment and remand is granted, defendant's cross-motion for summary judgment is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

        On July 16, 2004, plaintiff filed an application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act (Act).[1]  (Transcript (Tr.) at

---

[1] Plaintiff previously applied for SSI disability benefits but did not pursue an appeal after the claim was denied through the reconsideration level on February 21, 1996.  (Tr. at 11.)

1

67-69.)  The application was denied initially on December 15, 2004, and upon reconsideration on July 29, 2005.  (Tr. at 50-53, 56-61.)  On August 24, 2005, plaintiff submitted a timely request for a hearing on the denials.  (Tr. at 49.)  The scheduled administrative hearing was continued initially to provide plaintiff additional time to seek representation and was continued a second time to give plaintiff time to obtain new counsel after he relocated to the Sacramento area.  (Tr. at 347-57, 358-62.)  At the administrative hearing held on May 21, 2007, plaintiff was represented and testified.  (Tr. at 363-91.)  In a decision issued on June 13, 2007, the ALJ determined that plaintiff had not been under a disability since June 22, 2004, the date his application for SSI was protectively filed.  (Tr. at 11-21.)  The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since July 10, 1988, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq*) (Exhibit 1D/2).
>
> 2. The claimant has the following severe impairments: Obesity, diabetes, and illiteracy (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work activity.  He is not limited in sitting during an 8-hour workday.  He can stand/walk for up to two hours during an 8-hour workday.  He is unlimited in his ability to lift and carry.  He is limited in climbing, stooping, kneeling, and crouching because of his obesity and shortness of breath.  He has no manipulative, visual, communicative, or environmental workplace limitations (Exhibit 4F/7).
>
> 4.[2] The claimant is unable to perform any past relevant work (20 CFR § 416.965).
>
> 5. The claimant was born on May 28, 1973 and was 31 years old, which is defined as a younger individual age 18-44, on

---

[2] Two of the ALJ's findings are numbered "4."

|   |   |   |
|---|---|---|
|   |   | June 22, 2004, the date the SSI application was filed (20 CFR 416.963). |
|   | 6. | The claimant has a limited education (8th grade) and is able to communicate in English (20 CFR 416.964). |
|   | 7. | Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
|   | 8. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966). |

(Tr. at 14-21.)

On September 28, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 3-7.) On November 26, 2007, plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum

of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations.  Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances the following two arguments in support of his motion for summary judgment and remand: (1) the ALJ rejected the opinion of the consultative examiner with respect to plaintiff's ability to stand and/or walk in an 8-hour workday, without a legitimate basis for doing so; and (2) the ALJ erred in utilizing the Medical-Vocational Guidelines despite the presence of extensive non-exertional limitations. Plaintiff seeks an order reversing the decision of the Commissioner and remanding the case for further administrative proceedings that will cure these defects. Plaintiff's arguments are addressed below.

**I. Evaluation of Medical Opinions**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.[3] <u>Lester</u>, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester</u>, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990).

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." <u>Lester</u>, 81 F.3d at 830 (quoting <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." <u>Id.</u> (quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).

/////

---

[3] Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

1    "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. at 830. An examining physician's uncontradicted opinion, like a treating physician's uncontradicted opinion, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is contradicted by another doctor, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original). Compare Lester, 81 F.3d at 831-32 (holding that the ALJ's rejection of the opinions of a treating physician and an examining psychologist was not warranted where the rejection was based on a nontreating, nonexamining doctor's opinion supplemented only by unsupported and unwarranted speculation that the treating and examining doctors were misrepresenting the claimant's condition or were not qualified to evaluate it), Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence for rejecting the opinions of treating or examining physicians), and Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that the report of the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's decision to reject the examining physician's opinion that the claimant was disabled) with Andrews v. Shalala, 53 F.3d 1035, 1042-43 (9th Cir. 1995) (upholding the ALJ's decision to reject the opinion of an examining psychologist who was not an expert in the area of the claimant's alleged disability, whose psychological testing was suspect due to the claimant's drug use, and whose opinion conflicted with medical reports in the record, the claimant's own testimony, and the opinions of five nonexamining mental health professionals, including one who was an expert in the relevant area), and Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding the ALJ's decision to reject the opinion of a treating physician where the

6

decision was not based solely on the nonexamining physician's opinion but also on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with the treating physician's opinion).

The opinion at issue in this case is that of Sanford Selcon, M.D., a physician who performed a complete internal medicine evaluation of plaintiff at the request of the state agency. (Tr. at 267-73.) Dr. Selcon reviewed available medical records and conducted a physical examination. His findings were based on formal testing and on observation of plaintiff's spontaneous action. (Tr. at 269.) Dr. Selcon found plaintiff, who is 6'2" tall and weighed 380 pounds on the day of the examination, to be a profoundly obese 31-year old male who was obviously short of breath even at rest while sitting during the interview. (Id.) In recording the history of plaintiff's complaints, Dr. Selcon noted that plaintiff had experienced chronic low back pain for several years, beginning in 1989 and worsening over time as he became more obese. (Tr. at 267.) Plaintiff reported that he has difficulty standing for prolonged periods of time and walking for any distance because of his obesity and because of shortness of breath caused by his obesity and asthma. (Tr. at 267-68.) Dr. Selcon observed that plaintiff "has obvious trouble getting down to a sitting position and up from a seated position because of his weight." (Tr. at 268.) The range of motion in plaintiff's back was abnormal, with inability to flex beyond 50 degrees. (Tr. at 270.) Plaintiff's gait was normal. (Tr. at 271.) Dr. Selcon rendered the following functional assessment:

> The number of hours that the claimant could sit in an 8-hour work period is without limitations. The number of hours that the claimant could stand/walk in an 8-hour work period would be less than 2 hours. The amount of weight that the claimant could lift/carry is without limitations. There are postural limitations of climbing, stooping, kneeling, and crouching because of his obesity and shortness of breath. There is no limitation to manipulation. There are no visual, communicative, or workplace environmental limitations.

(Tr. at 271.)

/////

The ALJ interpreted Dr. Selcon's report as indicating that plaintiff "had no difficulty walking," and he found that "[t]he only abnormality Dr. Selcon noted throughout the entire examination was that [plaintiff] was not able to flex his back beyond 50 degrees." (Tr. at 15.)   The ALJ reached the following conclusion:

> After careful review of Dr. Selcon's report, I am not persuaded the claimant as [sic] limited to less than two hours of standing/walking.  As noted by the State Agency Dr. Selcon's limitiation [sic] on standing/walking is not supported by his objective findings.  I credit the State Agency determination.

(Tr. at 15, citing Exhibit 6F [tr. at 281-88]).  Thus, the ALJ rejected Dr. Selcon's opinion regarding plaintiff's capacity to stand and/or walk, and determined that plaintiff had the residual functional capacity to stand and/or walk for up to two hours during an 8-hour workday.  (Tr. at 17.)  The ALJ emphasized that he

> accord[ed] some weight to the report of Dr. Selcom [sic], however his restriction on standing/walking less than 2 hours is not supported by his findings.  The State Agency determination that the claimant can perform a full range of sedentary work is credited.

(Id.)  The ALJ noted plaintiff's testimony that "[h]e can stand for about 30 minutes and must sit for 40 minutes to rest" afterward (tr. at 18[4]) as well as the Social Security interviewer's note that plaintiff "did not appear to be in any great pain while sitting, standing up, or walking" (tr. at 19[5]).  The ALJ concluded his RFC analysis with the following statement:

> The finding that the claimant can perform sedentary level work on a sustained basis is supported by the objective clinical findings, and the claimant's activities and treatment regimen.  By his own admission he can stand 30 minutes at one time and in the past he has stated he can walk for up to 30 minutes.  I find this capability would allow the claimant to perform sedentary work.  This finding is essentially consistent with the findings of the State Agency.

(Tr. at 20.)

---

[4] See tr. at 383.

[5] See tr. at 92.

1  The ALJ did not find that Dr. Selcon's opinion was contradicted by the opinion of
2 any treating or examining physician.  Because the opinion of a nontreating, nonexamining state
3 agency physician cannot by itself constitute substantial evidence that would justify rejection of an
4 examining physician's opinion, the court has reviewed the state agency physician's opinion and
5 considered it in conjunction with the other evidence relied upon by the ALJ.
6  On a Physical Residual Functional Capacity Assessment form dated November 3,
7 2004, approximately two weeks after Dr. Selcon's report was issued, Janice Thornberg, M.D.,
8 marked the box indicating that plaintiff can stand and/or walk, with normal breaks, for a total of
9 "at least 2 hours in an 8-hour workday."  (Tr. at 282.)  In the space provided for an explanation of
10 the conclusions reached about the claimant's exertional limitations, Dr. Thornberg noted that (1)
11 plaintiff is a 31 year old male with a history of massive, life-long obesity and hospitalization for
12 diabetic mellitus ketoacidosis in October 2004; (2) the internal consultative examination
13 reflected that plaintiff is massively obese and his medications include insulin, Tylenol, Diltiazem,
14 aspirin, and Atacand; (3) plaintiff was short of breath at rest; (4) plaintiff had decreased range of
15 motion in his lower spine.  (Tr. at 282-83.)  Dr. Thornberg then opined that the medical source
16 statement's indication of a residual functional capacity of less than sedentary "is not supported by
17 obj[ective] findings" and that plaintiff has the residual functional capacity for sedentary work.
18 (Tr. at 283.)
19  Dr. Thornberg did not explain her assertion that Dr. Selcon's opinion of plaintiff's
20 residual functional capacity was not supported by his objective findings.  Nor did she cite any
21 medical evidence that contradicted Dr. Selcon's opinion.  Without more, Dr. Thornberg's
22 conclusory opinion does not constitute substantial evidence that warrants rejection of the opinion
23 of the examining physician, Dr. Selcon.
24  To the extent that the ALJ rejected a portion of Dr. Selcon's opinion based solely
25 on the conclusory opinion of a nontreating, nonexamining physician, the court finds that the ALJ
26 committed legal error because the opinion of a nontreating, nonexamining physician cannot,

9

without more, provide the substantial evidence required to reject the uncontradicted opinion of an examining physician.

To the extent that the ALJ rejected a portion of Dr. Selcon's opinion because the ALJ himself determined independently that Dr. Selcon's opinion was unsupported by objective findings, the court finds that the ALJ committed legal error by failing to explain how he reached such a conclusion. Based on formal testing and observation of plaintiff's spontaneous action, Dr. Selcon found that the profoundly obese plaintiff was obviously short of breath even at rest while sitting during the interview, had a history of chronic low back pain that had worsened over time as he became more obese, reported difficulty standing for prolonged periods of time and walking for any distance because of his obesity and because of shortness of breath caused by his obesity and asthma, had "obvious trouble getting down to a sitting position and up from a seated position because of his weight," and had a reduced range of motion in his back. Dr. Selcon's assessment of plaintiff's residual functional capacity was supported by these objective findings and was not contradicted by any medical evidence in the record.

Although the ALJ also relied on the observation of the Social Security interviewer and on plaintiff's testimony, neither the interviewer's observation nor plaintiff's own testimony provided any substantial evidence that plaintiff can walk and/or stand for two hours during an 8-hour workday. Plaintiff testified that if he walks about a block he has to sit down for about 30 minutes, and if he stands for as long as 30 minutes, such as while standing in line, he has to sit down for about 40 minutes. (Tr. at 381-83.) Plaintiff was not asked whether he could walk for 30 minutes more than one time during an 8-hour workday or stand for 30 minutes more than once during an 8-hour workday.

The court finds that the ALJ did not provide clear and convincing reasons for rejecting the uncontradicted opinion of the examining physician. Plaintiff is entitled to summary judgment on this claim.

/////

**II. Use of the Medical-Vocational Guidelines**

After determining that plaintiff was unable to perform any past relevant work, the ALJ proceeded to the fifth step of the sequential evaluation process. At this step, the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given his age, education, and work experience, by applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

"The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). "When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988)). See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (holding that "an ALJ may rely solely on the Medical-Vocational Guidelines (the 'grids') only when a claimant can perform the full range of applicable work" and the ALJ erred in failing to obtain the testimony of a vocational expert).

Here, the ALJ determined that plaintiff had the residual functional capacity to perform sedentary work activity. (Tr. at 17.) The ALJ applied Medical-Vocational Rule 201.23 and found plaintiff not disabled. (Tr. at 21.) Rule 201 encompasses a table of rules that apply to claimants whose maximum sustained work capability is limited to sedentary work. 20 C.F.R. Pt.

404, Subpt. P, App. 2, § 201. The rule itself recognizes that sedentary work represents a significantly restricted range of work. Id., § 201.00(a). That range of work includes approximately 200 separate unskilled sedentary occupations, each representing numerous jobs in the national economy, although 85 percent of the jobs are in the machine trades and benchwork occupational categories. Id.

Rule 201.23 directs a decision of "not disabled" for a claimant who is a younger individual (age 18 through 49), who is illiterate, and who has either no previous work experience or only unskilled work experience. Id., § 201.23. However, "a decision of 'disabled' may be appropriate for some individuals under age 45 . . . who do not have the ability to perform a full range of sedentary work." Id., § 201.00(h)(3).

Here, the ALJ's erroneous rejection of Dr. Selcon's opinion regarding the limitations on plaintiff's ability to stand and/or walk led to an also erroneous conclusion that plaintiff has the ability to perform a full range of sedentary work. Under the Commissioner's regulations, the physical exertion requirements for sedentary work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). "'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (Nov. 30, 1982). For purposes of sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting would generally total approximately 6 hours of an 8-hour workday." Id.

Dr. Selcon's opinion that "[t]he number of hours that the claimant could stand/walk in an 8-hour work period would be less than 2 hours," i.e., less than one-quarter of a workday, required the assistance of a vocational expert in deciding whether there are a significant number of jobs in the national economy that plaintiff can do. A vocational expert must testify

regarding the impact of plaintiff's limitation to less than two hours of standing and/or walking, together with plaintiff's illiteracy and postural limitations, on the number of sedentary, unskilled occupations or the total number of jobs that exist in the national economy that plaintiff can perform.  See Aukland, 257 F.3d at 1035-37 (reversing ALJ's determination that claimant could perform full range of sedentary work and ALJ's use of grids where ALJ failed to set forth specific and legitimate reasons for rejecting treating physician's opinion that claimant had difficulty standing or sitting); Tackett, 180 F.3d at 1102-04 (reversing ALJ's determination that claimant could perform full range of sedentary jobs and ALJ's use of grids where ALJ disregarded medical evidence of non-exertional limitations).

For these reasons, the court finds that plaintiff is also entitled to summary judgment on his claim that the ALJ failed to properly assess his residual functional capacity and erred in using the grids instead of obtaining the testimony of a vocational expert.

## CONCLUSION

Plaintiff seeks an order of remand for further administrative proceedings which address the defects of the Commissioner's final decision.  The court will remand the matter for further administrative proceedings consistent with this order.  See Widmark v. Barnhart, 454 F.3d 1063, 1065 (9th Cir. 2006) (reversing and remanding for proceedings consistent with the court's decision that the ALJ improperly rejected the examining physician's opinion, which in turn made the ALJ's use of the Medical-Vocational Guidelines in his final disability determination improper).

The case is remanded with directions to credit the uncontradicted opinion of Dr. Selcon, to include in the assessment of plaintiff's residual functional capacity the limitation that plaintiff is able to stand and/or walk for less than 2 hours during an 8-hour workday, and to obtain the testimony of a vocational expert in order to determine at step five of the sequential evaluation process whether there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's August 29, 2008 motion for summary judgment and remand (Doc. No. 19) is granted;

2. Defendant's September 30, 2008 cross-motion for summary judgment (Doc. No. 20) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: July 17, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/bell2532.order